IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| DERRELL JONES, | * | |
| | * | |
| Plaintiff, | * | CIVIL ACTION FILE |
| | * | |
| vs. | * | NO. _____ |
| | * | |
| G.T.R. ENTERPRISES, INC. | * | |
| d/b/a Thomasville Toyota, | * | |
| INV. FRANKLIN R. ROLLINS, | * | |
| JR., CPL. CALEB LINDBERG, | * | Jury Trial Demanded |
| and DEPUTY HOYT SMITH, | * | |
| | * | |
| Defendants. | * | |

**COMPLAINT FOR DAMAGES**

<u>Nature of the Case</u>

1.

This is a false imprisonment case.  Derrell Jones
rented a car from Thomasville Toyota that he used to visit
his mother in Albany.  Within a few days he extended this
rental period by phone without incident.  When Mr. Jones
called and requested a second extension, however, Toyota
asked him to return the car.  Which he agreed to do.  What
Mr. Jones did not know (and indeed had no reason to know)
was that Toyota had called the sheriff's office and reported
the car stolen.  On Toyota's word, and without any competent
investigation, sheriff's deputies arrested Mr. Jones.  The
baseless charges were abandoned but not before Mr. Jones
went to jail.

Parties

2.

Plaintiff DERRELL LAMAR JONES ("Jones") is a resident of Grady County, Georgia, and is subject to the jurisdiction of this Court.

3.

G.T.R. ENTERPRISES, INC. d/b/a Thomasville Toyota ("Toyota") is a Georgia corporation, which is registered to do business in the State of Georgia, and is subject to the jurisdiction of this Court.  Toyota can be served with process can be served with process through its registered agent, to-wit: Hazel Jennifer Griffin, 14724 US 19 South, Thomasville, GA 31757 (and P.O. Box 3055, Thomasville, GA 31799-3055).

4.

Defendant INVESTIGATOR FRANKLIN R. ROLLINS, JR. ("Rollins"), at all times relevant to this complaint, was employed by the Thomas County Sheriff's Department.  Rollins is sued in his individual capacity.  Rollins acted under the color of law.

5.

Defendant CPL. CALEB LINDBERG ("Lindberg"), at all times relevant to this complaint, was employed by the Thomas County Sheriff's Department.  Lindberg is sued in his

individual capacity.  Lindberg acted under the color of law.

6.

Defendant DEPUTY HOYT SMITH ("Smith"), at all times relevant to this complaint, was employed by the Thomas County Sheriff's Department.  Smith is sued in his individual capacity.  Smith acted under the color of law.

Venue

7.

All acts or omissions alleged in this complaint occurred in the Middle District of Georgia, where at least one defendant resides, and therefore venue is properly within this district under 28 U.S.C. § 1391(b)(2).

Jurisdiction

8.

Jurisdiction for this suit is conferred in part by 42 U.S.C. § 1983, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

9.

Under 28 U.S.C. §§ 1331 and 1343(a)(3)&(4), the Court

can entertain an action to redress a deprivation of rights
guaranteed by the United States Constitution, and the Court
has jurisdiction under 28 U.S.C. § 1367 to hear an action to
redress a deprivation of rights guaranteed by the laws and
the Constitution of the State of Georgia.

<u>Facts</u>

10.

On April 11, 2022, Jones rented a 2022 Toyota Corolla
from Toyota.  He planned to drive his six-year-old son from
Columbus to Albany, Georgia to visit Jones's mother (his
son's grandmother) with a return date of April 15.

11.

After April 11, but before his rental term lapsed,
Jones opted to extend the rental until April 18, and that
extension was approved by Kaylyn Page ("Page"), Toyota's
rental manager.  (At all times mentioned in this complaint,
Page acted in the scope of her employment.)

12.

On April 18, Jones spoke by phone with Page about
extending the rental for another week.  She agreed.  Jones
told Page that he would call the next day to approve the
charge on his debit card, as he was awaiting a payroll
deposit into his account.  Page agreed to this plan.

13.

The next day, April 19, Jones called Page to approve the amount on his debit card.  During this call he informed Page that he had accidentally run over something (possibly a tire) on the highway.  Page told Jones that running over the object presented a problem, and she instructed Jones to return the car.

14.

Even though Jones was in Albany, and even though Page had given him short notice to return the car, Jones pledged to Page that he would try to return the car by the close of business that day, i.e., April 19.  Page approved this plan. Jones later realized, however, that he was not going to make it back to Thomasville that day because of scheduling issues with his son's mother in Columbus.

15.

When Jones and Page spoke by phone early the next morning, April 20, Jones confirmed that he was en route to Thomasville and would return the car later that day.

16.

Unbeknownst to Jones, though, that morning Page contacted the Thomas County Sheriff's Office, or a person employed by that office, and reported that Jones had stolen the rental car.  She explained that the car was due back on

April 15 (even though she had agreed to an extension beyond
that date).  She also provided TCSO the location of the
rental car.

17.

During her phone call with Jones on the morning of
April 20, Cpl. Lindberg was with Page in the Toyota office.
Because the rental car was equipped with telematics
technology (including a GPS), they knew where the rental car
was; they knew that Jones had prepaid for the rental car
through at least April 18, along with a security deposit,
and that Jones had attempted to prepay for an extension on
April 19; they knew Jones had promised to return the car
later that day; and they knew that Jones first needed to
unload his belongings from (and refuel) the car before
returning it.

18.

Jones arrived at a friend's house in Thomasville that
morning, unloaded his belongings, and went to use the
bathroom.  That is when Jones heard loud banging on the
front door.

19.

Jones promptly answered the door.  TCSO deputies --
including Cpl. Lindberg, Deputy Smith, and Inv. Rollins --
where standing outside the front door.  Cpl. Lindberg pulled

Jones out of the house and, with the deputies' assistance, arrested him.

20.

Deputy Smith transported Jones to the Thomas County Jail, where he was booked, subjected to a strip search, and dressed out in a jail jumpsuit.

21.

At the jail, after repeated requests over the course of a day, Jones was able to speak with Inv. Rollins about the situation, who looked through Jones's phone history and confirmed that Jones had been communicating with Toyota about the rental car (i.e., the dispute, if any, raised by Toyota was contractual, not criminal). The sheriff's office immediately dropped the charges and released Jones, but not before he spent over 24 hours in jail.

22.

Jones's rental car was returned to Toyota by TCSO before there was even time to complete an incident report, or to place the car in the NCIC/GCIC databases.

23.

As a proximate cause the defendants' actions and inactions, Jones was subjected to an unlawful arrest, prolonged detention and jailing, humiliation, extreme anxiety, and emotional distress.

<u>Count 1</u>

<u>42 U.S.C. § 1983: Unlawful Entry</u>

<u>in violation of the Fourth Amendment</u>

(Defendant Lindberg)

24.

Jones incorporates paragraphs 1 through 23 here by this reference.

25.

Based upon his experience, knowledge and training as a law enforcement officer, the defendant knew or should have known that entering into a home without a warrant or exigency is presumptively unreasonable under the Fourth Amendment.

26.

An objectively reasonable law enforcement officer in the defendant's position would have known that he had no arguable probable cause to believe that a crime was taking place at the home.

27.

As a direct and proximate cause of the defendant's acts and omissions, the residence was unlawfully entered, entitling Jones to compensatory and punitive damages in an amount to be determined by the enlightened conscience of the jury.

<u>Count 2</u>

<u>42 U.S.C. § 1983: False Arrest</u>

<u>in violation of the Fourth Amendment</u>

(Defendants Lindberg, Rollins, and Smith)

28.

Jones incorporates paragraphs 1 through 23 here by this reference.

29.

Based upon their experience, knowledge and training as law enforcement officers, the defendants knew or should have known that no arguable probable cause existed to believe that Jones had committed a crime in April 2022.

30.

At all times relevant to this action, the law was established with obvious clarity that arresting a citizen without arguable probable cause and depriving a citizen of his liberty violates the Fourth Amendment to the United States Constitution.

31.

As a direct and proximate cause of the defendants' acts and omissions, Jones was detained, arrested, and incarcerated against his will, entitling him to compensatory, punitive and nominal damages in an amount to be determined by the enlightened conscience of the jury.

<u>Count 3</u>

<u>O.C.G.A. § 51-7-20: False Imprisonment</u>

(All Defendants)

32.

Jones incorporates paragraphs 1 through 23 here by this reference.

33.

On April 20, 2020, the defendants caused Jones to be unlawfully detained against his will, depriving him of personal liberty.

34.

This detention of Jones was unlawful because it was not predicated on any process and no exigent circumstances existed to justify the defendants' conduct.

35.

There would not have been a failure of justice had the defendants permitted Jones to leave unrestrained.

36.

As a result of the unlawful detention, Jones has suffered emotional and mental injury, entitling him to recover compensatory and punitive damages against the defendants for the loss of his rights under this claim, in an amount to be determined by the enlightened conscience of the jury.

Count 4

O.C.G.A. § 51-7-1: Malicious Arrest

(All Defendants)

37.

Jones incorporates paragraphs 1 through 23 here by this reference.

38.

The defendants knew or should have known that no probable cause existed to arrest Jones for a crime on April 20, 2022.

39.

The defendants acted with specific intent to do wrong and to cause an injury.

40.

As a direct and proximate cause of the defendants' acts and omissions, Jones was detained, arrested, incarcerated, and prosecuted against his will, entitling him to compensatory, punitive and nominal damages in an amount to be determined by the enlightened conscience of the jury.

Count 5

Negligence

(Defendant Toyota)

41.

Jones incorporates paragraphs 1 through 23 here by this

reference.

42.

Toyota owed a legal duty to Jones to have reasonable
suspicion that he had engaged in a criminal act before
calling the police to detain or arrest him, which duty it
breached by calling the police on him to falsely report a
crime, having Jones seized, searched and arrested. Toyota's
negligence proximately caused the injuries and damages to
Jones.

Count 6

O.C.G.A. § 34-7-20: Negligent Hiring,

Supervision, and Retention

(Defendant Toyota)

43.

Jones incorporates paragraphs 1 through 23 here by this
reference.

44.

Toyota owed a duty to hire, supervise, train, and
retain appropriate employees and agents, including Page.

45.

Toyota failed to determine Page's suitability as an
employee or agent, failed to perform an adequate background
check before hiring Page, failed to properly train Page,
failed to properly supervise Page, and improperly retained

Page.

46.

Toyota breached its duty of care.

47.

As a direct and proximate result of Toyota's actions and inactions, on April 20, 2022, Jones was arrested and jailed which has caused him suffered severe mental and physical pain and suffering, entitling him to damages.

<u>Count 7</u>

<u>Breach of Contract</u>

(Defendant Toyota)

48.

Jones incorporates paragraphs 1 through 23 here by this reference.

49.

Under the Agreement, Toyota was obligated to rent a 2022 Toyota Corolla to Jones.

50.

By contacting TCSO and reporting Jones as having converted or stolen the rental car rather than processing Jones's additional payment, Toyota failed to perform under the Agreement.

51.

Toyota's actions constitute a material breach of

contract, and Jones is entitled to compensatory and consequential damages in an amount to be determined by a jury.

<u>Count 8</u>

<u>O.C.G.A. § 10-1-391:</u>

<u>Georgia Fair Business Practices Act</u>

(Defendant Toyota)

52.

Jones incorporates paragraphs 1 through 23 here by this reference.

53.

Toyota was served with statutory notice of Jones's claims under the Georgia Fair Business Practices Act.  (The Administrator will be served a copy of this complaint as required under O.C.G.A. § 10-1-399(g).)

54.

Toyota did not resolve the dispute after receiving Jones's notice.

55.

Toyota's actions, including initiating a criminal prosecution of Jones by offering false and recklessly misleading information and omitting key facts -- all in attempt to enforce a rental agreement and collect a perceived debt -- amounts to an unfair and deceptive trade

practice that generally harms the consumer public.

56.

Jones has suffered and will continue to suffer general and exemplary damages as a result of Toyota's intentional actions in an amount to be proven at trial.

Count 9

Intentional Infliction of Emotional Distress

(Defendant Toyota)

57.

Jones incorporates paragraphs 1 through 23 here by this reference.

58.

The defendant's conduct of calling the police to make report a stolen car was extreme and outrageous.

59.

The defendant's wrongful conduct caused Jones severe emotional distress and mental anguish.

Count 10

O.C.G.A. § 51-12-5.1: Punitive Damages

(All Defendants)

60.

Jones incorporates paragraphs 1 through 23 here by this reference.

61.

The defendants' actions described in this complaint were willful and intentional misconduct, malice, wantonness, oppression or, at the very least, displayed a want of care showing a conscious indifference to consequences as contemplated under O.C.G.A. § 51-12-5.1.

<u>Count 11</u>

<u>O.C.G.A. § 13-6-11: Attorney's Fees</u>

(All Defendants)

62.

Jones incorporates paragraphs 1 through 23 here by this reference.

63.

By their acts and omissions specified above, as well as other conduct, the defendants have acted in bad faith, have been stubbornly litigious, and have caused Jones unnecessary trouble and expense.

64.

Jones is entitled to recover his actual expenses of litigation, including attorney's fees, from the defendants.

WHEREFORE, Jones respectfully requests the following relief:

    (a)  That as to Counts 1 through 10, the Court award Jones compensatory and punitive damages against

the defendants in an amount to be determined by
the enlightened conscience of an impartial jury;

(b)    That the Court grant Jones his reasonable costs
and attorney's fees in bringing this action in an
amount to be determined at trial;

(d)    That Jones be granted a trial by jury on all
issues so triable; and

(e)    That Jones be granted such other and further
relief as this Court deems just and proper.

Respectfully submitted,


BY:/s/ Cary S. Wiggins
Cary S. Wiggins
Ga. Bar No. 757657

WIGGINS LAW GROUP, LLC
Suite 401
260 Peachtree Street, NW
Atlanta, Georgia 30303
Telephone:  (404) 659-2880
cary@wigginslawgroup.com