## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

| | | |
|---|---|---|
| DERRELL JONES, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 7:23-CV-87 (LAG) |
| | : | |
| GTR ENTERPRISES, INC. d/b/a | : | |
| THOMASVILLE TOYOTA, *et al.*, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## <u>ORDER</u>

Before the Court are Defendants Franklin Rollins and Caleb Lindberg's Motion for Summary Judgment (Doc. 17) and Defendant GTR Enterprises, Inc. d/b/a Thomasville Toyota's (Defendant Thomasville Toyota) Motion for Summary Judgment (Doc. 19). For the reasons below, Defendants Rollins and Lindberg's Motion for Summary Judgment (Doc. 17) is **GRANTED** and Defendant Thomasville Toyota's Motion for Summary Judgment is **DENIED**.

## BACKGROUND

Plaintiff Derrell Jones was arrested after failing to return a rental car and brings § 1983 and state law claims against Defendants GTR Enterprises Inc., doing business as Thomasville Toyota, Franklin R. Rollins, Jr., Caleb Lindberg, and Hoyt Smith. (Doc. 1). On April 10, 2022, Plaintiff made a reservation online to rent a vehicle from Defendant Thomasville Toyota.[1] (Doc. 17-1 ¶1; Doc. 19-1 ¶ 1; Doc. 26-1 ¶ 1; Doc. 33-1 ¶ 1). He planned to use the car to drive his six-year old son from Columbus to Albany to visit Plaintiff's mother. (Doc. 17-6 at 15:9–20, 19:22–25). Kaylyn Page, Defendant Thomasville

---

[1]    The relevant facts are derived from the Parties' Statements of Material facts, responses thereto, and the record in this case. (*See* Docs. 17-1, 19-1, 26-1, 33-1). When evaluating the Motion for Summary Judgment, the Court construes the facts in the light most favorable to Plaintiff, the nonmoving party. *See* Fed. R. Civ. P. 56; *Jacoby v. Baldwin County*, 835 F.3d 1338, 1342 (11th Cir. 2016) (citations omitted).

Toyota's rental manager, reviewed the online reservation, called Plaintiff, and explained the procedure for picking up the vehicle. (Doc. 17-1 ¶¶ 2–3; Doc. 17-7 at 20:25–21:5; Doc. 19-1 ¶¶ 2–3; Doc. 26-1 ¶¶ 2–3; Doc. 33-1 ¶¶ 2–3). Before 5:30 PM on April 11, Plaintiff went to Thomasville Toyota and met with an employee in Defendant's rental department. (Doc. 17-1 ¶ 4; Doc. 19-1 ¶ 5; Doc. 26-1 ¶ 4; Doc. 33-1 ¶ 5). At this meeting, Plaintiff signed a contract to rent a 2022 Toyota Corolla. (Doc. 17-1 ¶ 5; Doc. 19-1 ¶ 5; Doc. 33-1 ¶ 5). Under the contract, Plaintiff agreed to return the vehicle on April 15. (Doc. 17-1 ¶ 6; Doc. 19-1 ¶ 6; Doc. 26-1 ¶ 6; Doc. 33-1 ¶ 6). After taking the car, Plaintiff contacted Defendant Thomasville Toyota and extended the rental period through April 18. (Doc. 17-1 ¶ 7; Doc. 19-1 ¶ 7; Doc. 26-1 ¶ 7; Doc. 33-1 ¶ 7). Plaintiff reached out again on April 18 to extend the rental period but did not have the funds to do so. (Doc. 17-1 ¶¶ 8–9; Doc. 19-1 ¶ 9; Doc. 26-1 ¶¶ 8–9; Doc. 33-1 ¶ 9). Instead, Defendant agreed to extend the rental period by one day to April 19. (Doc. 17-6 at 79–81; Doc. 17-1 ¶ 10; Doc. 26-1 ¶ 10).

On the night of April 18 or the early morning of April 19, Plaintiff drove over a semi-truck tire and damaged the rental vehicle. (Doc. 17-1 ¶ 16; Doc. 17-6 at 81:14–18; Doc. 19-1 ¶ 10; Doc. 26-1 ¶ 16; Doc. 33-1 ¶ 10). On April 19, he sought to extend the rental period by a week again. (Doc. 17-1 ¶ 11; Doc. 19-1 ¶ 12; Doc. 26-1 ¶ 11; Doc. 33-1 ¶ 12). Plaintiff informed Page that the car had been damaged, but Page told Plaintiff that the contract would not be extended and instructed him to return the rental vehicle as agreed. (Doc. 17-1 ¶¶ 17–18; Doc. 19-1 ¶ 13; Doc. 26-1 ¶¶ 17–18; Doc. 33-1 ¶ 13). She further informed him that he would not receive his deposit back and that Defendant Thomasville Toyota did not have another vehicle for him to rent. (Doc. 17-1 ¶ 19; Doc. 19-1 ¶ 13; Doc. 26-1 ¶ 19; Doc. 33-1 ¶ 13). At the time of the phone call, Plaintiff was in Albany but told Page that he would try to get the vehicle back to Defendant Thomasville Toyota before they closed that day. (Doc. 17-1 ¶¶ 21–22; Doc. 19-1 ¶¶ 14–15; Doc. 26-1 ¶¶ 21–22; Doc. 33-1 ¶¶ 14–15). Plaintiff did not return the vehicle on April 19. (Doc. 17-1 ¶¶ 21–22; Doc. 19-1 ¶¶ 14–15; Doc. 26-1 ¶¶ 21–22; Doc. 33-1 ¶¶ 14–15). According to Page, she tried to call Plaintiff multiple times, but he did not pick up. (Doc. 17-7 at 30:12–21).

At 3:23 PM on April 19, Page called Defendant Rollins, an investigator with the Thomas County Sheriff's Office. (Doc. 17-1 ¶ 24; Doc. 26-1 ¶ 24). She told Defendant Rollins that she had a customer who had a rented vehicle, had not returned the vehicle, and now was not returning her calls. (Doc. 17-1 ¶ 25; Doc. 26-1 ¶ 25). Page erroneously stated that the rental vehicle had been due on April 18 despite the fact that she had extended the rental to April 19. (Doc. 17-1 ¶ 26; Doc. 26-1 ¶ 26). Defendant Rollins told Page that if Plaintiff did not return the vehicle by close of business that day, she should contact the Thomas County Sheriff's office and make a report regarding the vehicle. (Doc. 17-1 ¶ 27; Doc. 26-1 ¶ 27). According to Page's phone log, at 8:30 AM the next morning, Page called Plaintiff and Plaintiff stated that he could not make it back to Thomasville in time to bring back the car the day before. (Doc. 17-7 at 181). When Page asked if he was returning the car that day, Plaintiff hung up on her. (*Id.*). Page then called Defendant Rollins again. (Doc. 17-1 ¶ 29; Doc. 26-1 ¶ 29). Defendant Rollins told Page to keep him apprised of the situation. (Doc. 17-1 ¶ 30; Doc. 26-1 ¶ 30).

At 9:56 AM on April 20, Page also filed a report with the Thomas County Sheriff's office. (Doc. 17-1 ¶ 31; Doc. 26-1 ¶ 31). Defendant Lindberg, a deputy sheriff, met with Page at Thomasville Toyota. (Doc. 17-1 ¶ 32; Doc. 26-1 ¶ 32). Page provided Defendant Lindberg with a copy of the rental contract and told him that Plaintiff had agreed to turn in the vehicle on April 18. (Doc. 17-1 ¶ 33; Doc. 26-1 ¶ 33). During the conversation, Page referred to the rental car as a "stolen vehicle." (Doc. 17-1 ¶ 34; Doc. 26-1 ¶ 34). She told Defendant Lindberg that Plaintiff had stated that he was out of town but that the vehicle was actually in Thomasville. (Doc. 17-1 ¶ 35; Doc. 26-1 ¶ 35). The vehicle was equipped with telematics, which allowed Defendant Thomasville Toyota to track its location. (Doc. 17-1 ¶ 37; Doc. 26-1 ¶ 37). At 10:24 AM, Page wrote a note documenting that the tracking system showed that the vehicle was being driven around Thomasville. (Doc. 17-1 ¶ 38). Page also noted that she had called Plaintiff who said he was on his way. (Doc. 17-7 at 181). Plaintiff stopped at the Gateway Shopping Center, which is two-hundred yards away from Thomasville Toyota but did not drop off the car. (Doc. 17-1 ¶ 39; Doc. 26-1 ¶ 39). At

10:50 AM, Page wrote in her notes: "still on the phone with officer, currently [vehicle] is at 435 Calhoun St not moving, officer headed that way." (Doc. 17-7 at 181).

At 11 AM on April 20, 2022, Defendant Rollins, Defendant Lindberg, and other deputies arrived at a residence at 425 East Calhoun Street in Thomasville. (Doc. 17-1 ¶ 41; Doc. 26-1 ¶ 41). Defendants located the rental car and Defendant Lindberg knocked on the front door. (Doc. 17-1 ¶ 43; Doc. 26-1 ¶ 43). (Doc. 17-1 ¶ 44; Doc. 26-1 ¶ 44). When Plaintiff opened the door, Defendant Lindberg asked Plaintiff to step out, placed Plaintiff under arrest and transported Plaintiff to the Thomas County Jail. (Doc. 17-1 ¶¶ 49–50; Doc. 26-1 ¶¶ 49–50). Plaintiff stayed in jail overnight. (Doc. 17-1 ¶ 51; Doc. 26-1 ¶ 51).

According to Plaintiff, Defendant Rollins interviewed Plaintiff on April 21. (Doc. 17-1 ¶ 51; Doc. 26-1 ¶ 51). Plaintiff testified at his deposition that he authorized Defendant Rollins to look through his cell phone during this meeting. (Doc. 17-1 ¶ 52; Doc. 26-1 ¶ 52). After looking through the phone, Defendant Rollins told Plaintiff that he was free to go. (Doc. 17-1 ¶ 53; Doc. 26-1 ¶ 53). According to Defendant Rollins, there were two meetings with Plaintiff. On April 20, the day Plaintiff was arrested, he interviewed Plaintiff "to get his side of the story" and to determine whether the dispute regarding the rental car was a misunderstanding or a theft. (Doc. 17-9 at 81:5–24). The meeting lasted about ten minutes. (Doc. 17-9 at 86:8–11). Defendant Rollins testified that, because he determined that he needed more information, he told Plaintiff that the Sheriff's Department would make a decision the next morning regarding the charges against him. (Doc. 17-9 at 88:12–18). The next morning, according to Defendant Rollins, he met with Plaintiff again and informed Plaintiff that criminal charges were being dismissed. (Doc. 17-9 at 89:13–19). Plaintiff was released from jail at 9:55 AM on April 21. (Doc. 17-1 ¶ 58; Doc. 26-1 ¶ 58).

Plaintiff filed a Complaint in this Court on August 4, 2023, pursuant to this Court's federal question jurisdiction. 28 U.S.C. § 1331; (Doc. 1 ¶¶ 8–9). Therein, Plaintiff brings two 42 U.S.C. § 1983 claims for unlawful entry and false arrest in violation of the Fourth Amendment. (Doc. 1 ¶¶ 24–40). Plaintiff also brings state law claims for false imprisonment and malicious arrest against Defendants Rollins, Lindberg, and Smith in Counts I to IV and for false imprisonment, malicious arrest, negligent hiring, supervision,

and retention, breach of contract, violations of Georgia Fair Business Practices Act, and intentional infliction of emotional distress against Defendant Thomasville Toyota in Counts III through IX. (*Id.* ¶¶ 32–59). Plaintiff seeks compensatory and punitive damages against all Defendants and attorneys' fees. (*Id.* ¶¶ 60–64). The Parties stipulated to the dismissal of Defendant Smith from the case on September 26, 2024. (Doc. 20). Defendants Lindberg and Rollins filed a Motion for Summary Judgment on September 23, 2024. (Doc. 17). Plaintiff responded on November 25, 2024, and Defendants Lindberg and Rollins replied on December 23, 2024. (Docs. 26, 32). Defendant Thomasville Toyota also filed a Motion for Summary Judgment on September 23, 2024. (Doc. 19). Plaintiff responded on January 6, 2025, and Defendant Thomasville Toyota did not file a reply. (Doc. 32). Thus, the Motions for Summary Judgment (Docs. 17, 19) are ripe for review. M.D. Ga. L.R. 7.3, 7.3.1(A).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate where "the evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (citation omitted). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citations omitted). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1311 (11th Cir. 2018) (quoting *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004)). At summary judgment, the Court views the evidence "in the light most favorable to the non-moving party" and resolves factual disputes for the nonmoving party when doing so is supported by sufficient evidence. *Gogel*, 967 F.3d at 1134 (quoting *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007)); *Whitehead v. BBVA Compass Bank*,

979 F.3d 1327, 1328 (11th Cir. 2020).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018); *Whitehead*, 979 F.3d at 1328. The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact or by demonstrating that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013) (per curiam). If the movant meets their initial burden, the nonmoving party must demonstrate that there is a genuine dispute for trial. *Poer v. Jefferson Cnty. Comm'n*, 100 F.4th 1325, 1336 (11th Cir. 2024). The nonmovant must "go beyond the pleadings and . . . present competent evidence in the form of affidavits, answers to interrogatories, depositions, admissions and the like, designating specific facts showing a genuine issue for trial." *Lamar v. Wells Fargo Bank*, 597 F. App'x 555, 557 (11th Cir. 2014) (per curiam) (citing *Celotex Corp.*, 477 U.S. at 324). "All material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate." M.D. Ga. L.R. 56; *see Mason v. George*, 24 F. Supp. 3d 1254, 1260 (M.D. Ga. 2014).

## DISCUSSION

## I.    Defendants Rollins and Lindberg's Motion for Summary Judgment

Defendants Rollins and Lindberg seek summary judgment on Plaintiff's § 1983 claims for unlawful entry and false arrest and Plaintiff's state claims for false imprisonment and malicious arrest. Plaintiff consents to the dismissal of these claims. (Doc. 26 at 17 n.8). Accordingly, Counts I and III are dismissed.

### A.  Section 1983 False Arrest Claim (Count II)

In Count II, Plaintiff asserts a false arrest claim against Defendants Lindberg and Rollins. (Doc. 1 ¶¶ 23–27). In the Motion for Summary Judgment, Defendants argue that Defendant Rollins did not "seize" Plaintiff because he did not instigate the arrest or reach

the level of participation in Plaintiff's arrest to give rise to Fourth Amendment liability. (Doc. 17-2 at 10–11). Second, both Defendants Lindberg and Rollins argue that they are entitled to qualified immunity as to the false arrest claim. (*Id.*).

Defendant Rollins argues that he did not participate in Plaintiff's arrest such that he can be held liable for a Fourth Amendment violation. (Doc. 17-2 at 10–11). "[W]here an officer was present during an arrest and knew that the arresting officer had no reasonable basis for arguable probable cause, the non-arresting officer c[an] be liable under § 1983 if he was sufficiently involved in the arrest[;]" *Wilkerson v. Seymour*, 736 F.3d 974, 979 (11th Cir. 2013); but "[m]erely being present with the arresting officers at the scene is not enough, unless the plaintiff can show that the defendant officer was part of the chain of command authorizing the arrest action." *Brown v. City of Huntsville*, 608 F.3d 724, 737 (11th Cir. 2010). "To establish § 1983 liability, a plaintiff must show 'proof of an affirmative causal connection' between a government actor's acts or omissions and the alleged constitutional violation, which 'may be established by proving that the official was personally involved in the acts that resulted in the constitutional deprivation.'" *Id.* (citation omitted). In *Jones v. Cannon*, 174 F.3d 1271 (11th Cir. 1999), the Eleventh Circuit concluded that a reasonable jury could find that the non-seizing officer "participated" in another officer's warrantless arrest because he "stayed with [the plaintiff] while [the arresting officer] called the state's attorney about probable cause," "was present during the [plaintiff's] interview," "took notes" that were used in the arrest report, "reviewed the report for accuracy," and, "[m]ore importantly, . . . transported [the plaintiff] to jail" with the arresting officer. *Id.* at 1284. In contrast, in *Brown*, the court concluded that Defendant was not a part of the chain of command authorizing the arrest action where one officer, while in the process of cuffing another suspect, ordered the other officer on the scene to "arrest [the plaintiff], too." *Brown*, 608 F.3d at 737. The Court explained that "[t]here was no active personal participation by [the defendant officer] in [the plaintiff's] arrest[,]" and that the defendant officer did not have "supervisory control over the officer who did[.]" *Id.*

Here, Page contacted Defendant Rollins, and Rollins communicated with her about the location of the rental car. (Doc. 17-1 ¶¶ 24–27; Doc. 26-1 ¶¶ 24–27). Defendant Rollins

then travelled to Plaintiff's residence and was on the scene when Defendant Lindberg handcuffed Plaintiff. (Doc. 17-1 ¶ 48; Doc. 26-1 ¶ 48; Body Camera Footage 1 at 6:20–6:30). In the body camera footage, after Plaintiff tries to explain that he planned to return the car once he found someone who could follow him and give him a ride back, Defendant Rollins tells him "I'm going to take you to the Sheriff's office. I'm going to talk to you some more when we get down there." (Body Camera Footage 1 at 6:20–6:30). The two officers who drove Plaintiff to the police station asked Defendant Rollins, "Should we take him to you or book him?" (*Id.* at 7:58–8:05). Defendant Rollins responded, "Book him." (*Id.*). As Defendant Rollins left the scene, he turned back to the other officers and said, "I appreciate it y'all." (*Id.* at 8:15–8:18). Moreover, Defendant Rollins interviewed Plaintiff to determine whether or not to press charges and filled out the arrest paperwork. (Doc. 17-1 ¶¶ 51–53; Doc. 17-7 at 127–28; Doc. 26-1 ¶¶ 51–53). As was the case in *Jones*, Defendant Rollins was at the scene at the time of the arrest, drafted and signed the arrest record, and conducted interviews with Plaintiffs. (Doc. 17-1 ¶¶ 51–53; Doc. 17-9 at 19:2–9, 127–128; Doc. 26-1 ¶¶ 51–53). While he did not cuff Plaintiff himself or drive Plaintiff to the jail, after hearing Plaintiff's statement on the scene he affirmed that Plaintiff should be taken into custody and told the officers that were transporting Plaintiff to book him. (Body Camera Footage 1 at 6:20–8:05). Furthermore, it appears that Defendant Rollins, as a sergeant, was the highest ranked officer at the scene and would have had supervisory control over Corporal Lindberg and the other deputies and that he ordered Deputy Smith to book Plaintiff upon his arrival at the scene. (Doc. 17-9 at 53:24–54:13; Body Camera Footage 1 at 6:20–8:05). Thus, there is sufficient evidence for a reasonable jury to find that Defendant Rollins participated in Plaintiff's arrest and was a part of the chain of command that authorized the arrest.

Plaintiff challenges the reasonableness of the arrest based on the minimal investigation that Defendants performed. (Doc. 26 at 14). He argues that that the investigation was "one-sided" and that, if Defendants had performed further investigation before arresting Plaintiff, they would have determined, as Rollins did after interviewing Plaintiff in jail, that the dispute was civil and not criminal. (Doc. 26 at 15). Moreover,

Plaintiff argues that it was not reasonable for officers to rely on Page's statement because she later admitted in her deposition that she omitted at least one call with Plaintiff from the morning of April 20 from her call log. (Doc. 26 at 14; Doc. 17-7 at 55:2–18, 101:5–14).

While Page's statement contained errors and omissions–wrongfully telling the police that the rental period ended on the 18th rather than the 19th and failing to note the April 20th call–"officers are not required to perform error-free investigations or independently investigate every proffered claim of innocence." *Davis v. City of Apopka*, 78 F.4th 1326, 1335 (11th Cir. 2023) (citation omitted). Officers cannot, however "consciously ignore[] evidence they already possess[] that cast[s] significant doubt on whether a defendant is guilty." *Id.* at 1342. Plaintiff does not argue that Defendants Lindberg and Rollins ignored such evidence or otherwise established that the investigation was constitutionally deficient.

Plaintiff also argues that Defendants did not have arguable probable cause to arrest him because it is the policy of Thomas County Sheriff's office to not consider any rental under four or five days overdue as a potential criminal case. (Doc. 26-1 at 14). The Parties dispute the extent to which this was the department's policy. Regardless, "many police departments have internal procedures that are more restrictive of conduct than what is otherwise permitted under state and federal law, and the Supreme Court has observed that a violation of these policies 'does not itself negate qualified immunity where it would otherwise be warranted.'" *Knight ex rel. Kerr v. Miami-Dade County*, 856 F.3d 795, 813 (11th Cir. 2017) (quoting *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 616 (2015)).

Considering the false arrest claim, it is well established that "[a] warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim." *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996). "The existence of probable cause at the time of arrest, however, constitutes an absolute bar to a section 1983 action for false arrest." *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004) (citation omitted), *abrogated on other grounds*. "Probable cause exists where the facts and circumstances within the collective knowledge of the law enforcement officials, of which

they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe an offense has been or is being committed." *United States v. Jimenez,* 780 F.2d 975, 978 (11th Cir. 1986) (internal quotation marks and citations omitted). Further, "[p]robable cause to arrest exists when an arrest is objectively reasonable based on the totality of the circumstances." *Myers v. Bowman*, 713 F.3d 1319, 1326 (11th Cir. 2013) (citing *Kingsland*, 382 F.3d 1226). "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* (citation omitted). "This probable cause standard is practical and non-technical, applied in a specific factual context and evaluated using the totality of the circumstances." *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007). "Although probable cause requires more than suspicion, it does not require convincing proof, and need not reach the [same] standard of conclusiveness and probability as the facts necessary to support a conviction." *Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003).

"Qualified immunity protects government employees from suit in their individual capacities for discretionary actions in which they engage in the course of their duties." *Alcocer v. Mills*, 906 F.3d 944, 950–51 (11th Cir. 2018) (citations omitted). The doctrine "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam)); *Malley v. Briggs*, 475 U.S. 335, 341 (1986). But qualified immunity does not protect an official who "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate" the plaintiff's constitutional rights. *Alcocer*, 906 F.3d at 951 (quoting *Holmes v. Kucynda*, 321 F.3d 1069, 1077 (11th Cir. 2003)). If "the state of the law at the time of an incident provided 'fair warning' to the defendants that their alleged conduct was unconstitutional," they are not entitled to qualified immunity. *Mikko v. City of Atlanta*, 857 F.3d 1136, 1146 (11th Cir. 2017) (quoting *Salvato v. Miley*, 790 F.3d 1286, 1292 (11th Cir. 2015)).

An official asserting qualified immunity "bears the initial burden to prove that he

acted within his discretionary authority." *Williams v. Aguirre*, 965 F.3d 1147, 1156 (11th Cir. 2020) (quoting *Dukes v. Deaton*, 852 F.3d 1035, 1041 (11th Cir. 2017)). If the official shows that he was acting within his discretionary authority, "the burden then shifts to the plaintiff to show that qualified immunity should not apply." *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009) (citation omitted). Plaintiff does not dispute that Defendants acted within their discretionary authority when they arrested Plaintiff. (*See* Doc. 26 at 18). Thus, Plaintiff "must prove that qualified immunity is not appropriate" in this case. *See Luke v. Gulley* (*Luke II*), 50 F.4th 90, 95 (11th Cir. 2022) (per curiam) (citing *Williams*, 965 F.3d at 1156–57).

To overcome an official's qualified-immunity defense, a plaintiff must prove both (1) that the government official's conduct "violated his constitutional right" and (2) "that 'the right was clearly established at the time of the violation.'" *Washington v. Howard*, 25 F.4th 891, 898 (11th Cir. 2022) (quoting *Barnes v. Zaccari*, 669 F.3d 1295, 1303 (11th Cir. 2012)); *see Paez v. Mulvey*, 915 F.3d 1276, 1284 (11th Cir. 2019) (citation omitted). "[A] plaintiff can prove that a particular constitutional right [was] clearly established" by pointing to (1) "binding precedent tied to particularized facts in a materially similar case," (2) "a broader, clearly established principle" that "control[s] the novel facts of [the] particular case," or (3) "conduct which so obviously violates [the] Constitution that prior case law is unnecessary." *Waldron v. Spicher*, 954 F.3d 1297, 1304–05 (11th Cir. 2020) (fifth alteration in original) (citations omitted). A court's assessment of whether the plaintiff has met his burden "is fluid" and may be done in whatever order is deemed most appropriate for the case. *Lewis*, 561 F.3d at 1291 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)); *see Paez*, 915 F.3d at 1284 ("These two requirements may be analyzed in any order." (citation omitted)). "If the evidence at the summary judgment stage, construed in the light most favorable to the non-movant, contains 'facts inconsistent with granting qualified immunity, then the case and the qualified immunity defense proceed to trial.'" *Bradley v. Benton*, 10 F.4th 1232, 1238 (11th Cir. 2021) (quoting *Stryker v. City of Homewood*, 978 F.3d 769, 773 (11th Cir. 2020)), *cert. denied*, 142 S. Ct. 1112 (2022).

In wrongful arrest cases, the Eleventh Circuit has "defined the 'clearly-established'

prong as an 'arguable probable cause' inquiry." *Moran v. Cameron*, 362 F. App'x 88, 93 (11th Cir. 2010) (citations omitted); *Poulakis v. Rogers*, 341 F. App'x 523, 526 (11th Cir. 2009). Arguable probable cause exists where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff." *Kingsland*, 382 F.3d at 1232 (quotation marks omitted). The standard is an objective one and does not include an inquiry into the officer's subjective intent or beliefs. *Rushing v. Parker*, 599 F.3d 1263, 1266 (11th Cir. 2010); *Kingsland*, 382 F.3d at 1231 ("The essence of qualified immunity analysis is the public official's objective reasonableness, regardless of his underlying intent or motivation."). Whether an officer possesses arguable probable cause to make an arrest depends on the elements of the alleged crime and the operative fact pattern. *Skop*, 485 F.3d at 1137–38 (citing *Crosby v. Monroe County*, 394 F.3d 1328, 1333 (11th Cir. 2004)). Showing arguable probable cause does not, however, require proving every element of a crime. *Scarbrough v. Myles*, 245 F.3d 1299, 1302–03 (11th Cir. 2001). If the arresting officer had arguable probable cause to arrest for any offense, qualified immunity will apply. *Skop*, 485 F.3d at 1138; *Lee v. Ferraro*, 284 F.3d 1188, 1195–96 (11th Cir. 2002) (noting that "the validity of an arrest does not turn on the offense announced by the officer at the time of the arrest") (internal citations and quotations omitted).

Defendants argue that they had arguable probable cause to arrest Plaintiff for theft by taking. (Doc. 17-2 at 15). Under Georgia law "[a] person commits the offense of theft by taking when he unlawfully takes, or being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated." O.C.G.A. § 16-8-2. In support, Defendant points to the following undisputed facts. On April 19, Defendant Rollins spoke on the phone with Page who told him that she had a customer who was not returning her calls or the vehicle that he had rented. (Doc. 17-1 ¶¶ 24–27; Doc. 26-1 ¶¶ 24–27). The next day, Page provided Defendant Lindberg with a copy of the rental contract and told him that Plaintiff had agreed to return the vehicle on April 18. (Doc. 17-1 ¶ 33; Doc. 26-1 ¶ 33). Page told Defendant Lindberg "I've called him two or three times to get

him to return it. He says he's out of town. That's a lie—he has been around Thomasville." (Doc. 17-1 ¶ 35; Doc. 26-1 ¶ 35; Linderberg Body Cam 1 at 2:39–2:46).

Defendants argue that they had "reason to believe that Plaintiff gained unlawful possession of the Rental Car . . . [and] had been untruthful about his whereabouts and the whereabouts of the Rental Car" and had arguable probable cause to believe that Plaintiff had "unlawfully appropriated the Rental Car when Plaintiff failed to return the rental car to Thomasville Toyota in accordance with the terms of the rental agreement." (Doc. 17-2 at 15). Plaintiff argues that Defendants' reliance on Page's statement was not reasonable and that Defendants should have "adhered to the department's policy which is not to consider any rental under four or five days overdue as a potential criminal case." (Doc. 26 at 14). Plaintiff asserts that Page did not log his call on April 20 stating that he was on his way back to Thomasville; and, therefore, "this is not a situation where Toyota lost communication with its renter." (*Id.*). Plaintiff also argues that "[i]n a contractual relationship like this one, a slight delay in payment or vehicle return is entirely civil in nature; it is not a crime." (*Id.*).

Defendants appear to have had actual probable cause and certainly had arguable probable cause to arrest Plaintiff. While Page's statements to the police were not accurate, she told them that Plaintiff had retained possession of the rental car for two days after the contracted rental period had ended, that Plaintiff was misrepresenting his current location to Thomasville Toyota, and that Plaintiff was not communicating with Thomasville Toyota regarding when the car would be returned. (Doc. 17-1 ¶¶ 33–35; Doc. 26-1 ¶¶ 33–35; Linderberg Body Cam 1 at 2:35–2:46). Georgia's criminal code defines to "deprive" as to "without justification . . . withhold property of another permanently or temporarily[.]" O.C.G.A. § 16-8-1(1)(A). "The intent to withhold property of another even temporarily satisfies the mens rea requirement of the theft by taking statute. Thus, it is irrelevant whether deprivation was permanent or temporary." *Ferrell v. State*, 322 S.E.2d 751, 751 (Ga. 1984). The Eleventh Circuit has explained that "officers are given latitude when making on-the-spot determinations about a suspect's intent or mens rea." *Jackson v. Cowan*, No. 19-13181, 2022 WL 3973705, at *7 (11th Cir. Sept. 1, 2022) (per curiam)

(citing *Jordan v. Mosely*, 487 F.3d 1350 (11th Cir. 2007)). Here, at the time of the arrest, the officers had been advised that Plaintiff had kept the car two days beyond the rental period, was lying about the car's current location, and was refusing to communicate with the owner. Thus, they had probable cause to believe that Plaintiff unlawfully appropriated the property of Thomasville Toyota with the intention–whether temporarily or permanently–of depriving Thomasville Toyota of the vehicle in violation of Georgia's theft by taking statute. *See* O.C.G.A. § 16-8-2. Accordingly, Defendant's Lindberg and Rollins are entitled to qualified immunity on Plaintiff's false arrest claim.

### B. State Claim for False Imprisonment (Count III)

Plaintiff's remaining claims for false imprisonment negligence, negligent hiring, supervision, and retention, breach of contract, intentional infliction of emotional distress, for violation of Georgia's Fair Business Practices Act, punitive damages, and attorneys fees arise under Georgia law. (Doc. 1 ¶¶ 32–36, 41–64). Under 28 U.S.C. § 1367(a), district courts have supplemental jurisdiction to entertain state law claims so related to claims within the Court's original jurisdiction as to form part of the same case or controversy. Once a plaintiff's federal claims are dismissed, however, "there remains no independent original federal jurisdiction to support the Court's exercise of supplemental jurisdiction over the state claims against Defendant[s]." *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1352 (11th Cir. 1997). Pursuant to 28 U.S.C. § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction. While the "decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court," the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004) (per curiam) (citation omitted). In addition, § 1367(d) gives "the plaintiff at least 30 days to re-file in state court after a federal court declines to exercise supplemental jurisdiction," thereby removing "the principal reason for retaining a case in federal court when the federal claim belatedly disappears." *Personalized Media Commc'ns, LLC v. Scientific–Atlantic, Inc.*, 493 F. App'x 78, 82 n.1 (11th Cir. 2012)

(quoting *Myers v. Cnty. of Lake, Ind.*, 30 F.3d 847, 848–49 (7th Cir. 1994)); *see also* 28 U.S.C. § 1367(d) (providing that state law claims asserted in federal court along with "related" federal claims "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed"). Because Plaintiff's federal claims have been dismissed, the Court declines to exercise supplemental jurisdiction over his remaining state law claims.

## II.    GTR Enterprises' Motion for Summary Judgment

All of the claims against GTR Enterprises, as discussed above, arise under state law. The Court declines to exercise supplemental jurisdiction over these claims.

## CONCLUSION

Accordingly, Defendant Lindberg and Defendant Rollins Motion for Summary Judgment is **GRANTED** and Defendant GTR Enterprises' Motion for Summary Judgment is **DENIED**. The clerk of court is directed to enter judgment in favor of the Defendants.

**SO ORDERED**, this 23rd day of September, 2025.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**